UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIN ANXIN (WUXI) SEMICONDUCTOR TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL ASSET EXCHANGE AND TRADING, LLC, <br><br> Defendant. | Case No.  25-cv-08830-PCP <br><br> **ORDER GRANTING MOTION TO STAY** <br><br> Re: Dkt. Nos. 12, 15 |

Plaintiff Xin Anxin (Wuxi) Semiconductor Technology Co., Ltd. (Anxin) sues defendant Capital Asset Exchange and Trading, LLC (CAET) for breaching contractual agreements to deliver two machines used in the manufacture of semiconductors. Dkt. No. 1. Anxin alleges that it ordered two pieces of equipment in January 2023 and April 2023 and paid CAET a total of $3.25 million. CAET contends that federal trade regulations may prohibit it from providing Anxin with the equipment or issuing a refund to Anxin. CAET has asked the Treasury Department for a license authorizing such a refund and moves to stay this action until the earlier of six months from entry of a stay or the Treasury Department's issuance of a decision on its application. CAET also moves to dismiss all of Anxin's causes of actions other than its breach of contract claim. For the reasons stated below, the Court grants CAET's motion to stay. The Court denies CAET's request for limited discovery.

## BACKGROUND

Anxin is a Chinese corporation in Quanzhou, China.[1] Complaint ¶ 3. Anxin services

---

[1] Because CAET does not contest any of Anxin's factual allegations, the Court accepts the truth of the allegations in Anxin's complaint for the purposes of this motion. The Court also accepts the truth of CAET's factual representations because they are not disputed by Anxin.

photolithography equipment, providing "remanufacturing and/or refurbishment services for used legacy photolithography equipment to provide integration, custom solutions, technical support, and/or parts to be offered to Anxin's customers." Complaint ¶ 3. Photolithography is a part of the manufacturing of semiconductors.

Defendant CAET is a limited liability company incorporated and headquartered in California. Complaint ¶ 4. CAET is a commodity trader "addressing manufacturing needs in the semiconductor market" by helping semiconductor manufacturers find the physical capital they need to make chips. Complaint ¶ 4.

Anxin alleges that it entered into two contracts with CAET. Complaint ¶ 11. In January 2023, Anxin ordered a NIKON i12D, a photolithography machine used to make chips and agreed to pay CAET $2,512,000 for the machine (Order 01192023 293635641B). Complaint ¶ 13a. CAET invoiced Anxin for prepayment of the full amount. Complaint ¶ 13.[2] On February 1, 2023, Anxin wired the full $2,512,000 to CAET's bank account. Complaint ¶ 13a. CAET also charged Anxin for auxiliary services purportedly required to effectuate delivery of the NIKON machine. Accordingly, on February 22, 2023, CAET issued an invoice to Anxin charging it $25,000 for further processing and preparation. Complaint ¶ 13ai. (charging for "deinstallation, decontamination, and transport kits"). On March 2, 2023, CAET invoiced Anxin $27,050 for "rigging," "facility disconnect," and "crating." Complaint ¶ 13aii. Finally, on March 24, 2023, CAET invoiced Anxin $3,200 for "storage fees." Complaint ¶ 13aiii.

In April 2023, Anxin ordered an ASML Twincam AT 110B Scanner, another photolithography machine used for semiconductor manufacturing and agreed to pay $700,000 for the machine (Order 04072023 293652583B). Complaint at ¶ 13b. CAET invoiced Anxin for the full amount to be paid before delivery.[3] Anxin paid the full amount and paid for additional auxiliary services. Complaint ¶¶ 13-15.[4]

---

[2] The device identification number is **293635641** and the invoice is **25651-D1**.

[3] The device identification number is **293652583** and the invoice is **25842-D1**.

[4] CAET clarifies that a Nikon i12D Stepper "is a piece of photolithography equipment used to fabricate integrated circuits on silicon wafers" and that an ASML Twincam AT 110B Scanner is a

2

CAET has not delivered the two photolithography machines to Anxin and stopped responding to emails demanding performance or a refund. Complaint 5 ¶ 18. Anxin alleges that CAET employees "fabricate[d] excuses why [Anxin] could not take delivery of the" equipment. Complaint ¶ 52. After CAET failed to provide the purchased equipment or a refund, Anxin sued CAET for breach of contract, money had and received, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, violation of California Commercial Code § 2711, and fraudulent inducement. Anxin seeks damages, injunctive relief, specific performance, fees and costs, other just relief, and a jury trial. Complaint at 11–12.

CAET contends that it could not perform its contractual obligations due to the risk that Anxin would transfer the equipment to entities associated with the Chinese military. The Department of Commerce's Bureau of Industry and Security (BIS) regulates exports for "the national security, foreign policy, nonproliferation of weapons of mass destruction, and other interests of the United States." *United States v. Shih*, 73 F.4th 1077, 1089 (9th Cir. 2023) (quoting 15 C.F.R. §§ 730.1, 730.6). BIS requires companies to obtain a license to export specific goods subject to Export Administration Regulations, including the semiconductor manufacturing goods at issue in this case, because they can allegedly be used by militaries in manufacturing missiles, thermal imaging, lasers, and communications devices. *See* 15 C.F.R. §§ 730 Supp. 1; 744.23(a), (a)(4)(i). BIS also prohibits U.S. entities from supporting military users in China. *See* 15 C.F.R. § 744.6(b)(6)(iv). Finally, BIS requires sellers to investigate foreign importers for "any abnormal circumstances" in a transaction that could indicate that an export may be destined for an inappropriate end-use, end-user, or destination. 15 C.F.R. § 732, Supp. 3, § (a)(1).

The United States Treasury Department's Office of Foreign Assets Control (OFAC) administers and enforces the relevant trade sanctions. OFAC keeps a list of Chinese military companies, the "Non-SDN Chinese Military-Industrial Complex Companies List." *See* Off. of Foreign Assets Control, Non-SDN Chinese Military-Industrial Complex Companies List (Dec. 16, 2021), https://www.treasury.gov/ofac/downloads/ccmc/nscmiclist.pdf.

---

"lithography scanner, which is also used to transfer integrated circuit patterns onto silicon wafers."

United States District Court
Northern District of California

Separately, Executive Order 13382 prohibits U.S. individuals from transacting with any foreign person whom the Secretary of Treasury determines could materially contribute to the proliferation of weapons of mass destruction. Executive Order No. 13382, Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters, 70 Fed. Reg. 38567, § 1(a). OFAC may, however, grant licenses authorizing transactions that would otherwise be prohibited under OFAC regulations. *See* 31 C.F.R. § 501.801(b)(1).

CAET contends that it "did extensive due diligence regarding Anxin, including reviewing some of Anxin's prior transactions." CAET asserts that it located public media reports stating that Anxin had previously sold equipment subject to US export regulations to a Chinese company called Hangzhou Hikvision Digital Technology Co., Ltd. (Hikvision), which is on the U.S. government's list of Chinese military entities that threaten U.S. national security. CAET contends that the Treasury Department added Hikvision to its "Non-SDN Chinese Military Industrial Complex Companies List" on June 3, 2021. On the basis of these reports, CAET concluded that it could not deliver the photolithography equipment to Anxin. CAET also concluded that Treasury regulations prohibiting the provision of funds to entities that support weapons of mass destruction also precluded CAET from issuing a refund to Anxin.

Because CAET interpreted BIS and OFAC regulations to prohibit the delivery of Anxin's ordered equipment as well as issuance of a refund, it applied for an OFAC license permitting it to refund Anxin on November 5, 2025.

## DISCUSSION

The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine is prudential and does not implicate the Court's subject matter jurisdiction. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 759 (9th Cir. 2015).

Courts in the Ninth Circuit consider four factors in deciding to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that

United States District Court
Northern District of California

4

United States District Court
Northern District of California

subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086–87 (9th Cir. 2006). "'[E]fficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Astiana*, 783 F.3d at 760 (quoting *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).

The four factors and efficiency all favor staying Anxin's action for a short period of time while OFAC considers its license application.

First, whether CAET can comply with any damages remedy ordered in this matter will depend on whether such a payment would violate OFAC regulations. Even if the Court could address CAET's liability without considering those regulations (which is unclear), this significant remedial issue will need to be resolved in this litigation.

Second, whether CAET can issue a refund to Anxin appears to fall within OFAC's jurisdiction. Under the relevant statutes and regulations, the President and OFAC can prohibit "the making of any contribution or provision of funds, goods, or services" to parties that have been found to "have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction." Executive Order No. 13382 (June 28, 2005). CAET argues that providing the equipment at issue here to Anxin could materially contribute to the "proliferation of weapons of mass destruction" because the resulting chips could be "used in the production of missile guidance systems and other military applications," and that Anxin's ties to Hikvision mean that even issuing a refund could be viewed as providing such support.

Third, the substantive statutes here "subject[] an industry or activity to a comprehensive regulatory authority." *Davel*, 460 F.3d at 1087. Executive Order 13382 cites for its congressional authority the International Emergency Economic Powers Act and the National Emergencies Act, both of which apply to the semiconductor manufacturing and reselling industry broadly and independent of other statutes. *But see* 15 C.F.R. § 732.2(a)(1) ("If your item is subject to the exclusive jurisdiction of another Federal agency, comply with the regulations of that agency.").

Fourth, the issue "requires expertise or uniformity in administration." *Davel*, 460 F.3d at 1087. The issue here is whether CAET may send Anxin a refund of its money when CAET knows

5

that Anxin has been involved with alleged Chinese weapons makers. Executive Order 13382 applies broadly and "block[s]" "all property and interests in property" of "any foreign person" who has "engaged, or attempted to engage, in activities or transactions that have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction or their means of delivery (including missiles capable of delivering such weapons), including any efforts to manufacture, acquire, possess, develop, transport, transfer or use such items…."[5] Anxin does not need to *directly* produce weapons of mass destruction, only materially contribute to such manufacturing or "pose a risk of materially contributing to[] the[ir] proliferation …," including through "delivery." More importantly, OFAC has the authority to grant licenses exempting specific transactions from these provisions. Whether CAET can issue a refund to Anxin, the key remedy requested in this action, is thus an issue that requires OFAC's expertise.

Anxin frames the issue as whether the Court needs OFAC "to determine liability for either breach of contract or for fraud." Anxin further argues that its claims do not involve "a particularly complicated or nuanced area of law." But OFAC's involvement in this action will be of use in determining whether any monetary remedy is available and may affect whether Anxin's injuries are redressable. *See Zurabova v. Block, Inc.*, 2023 WL 8188843, at *3 (N.D. Cal. Nov. 27, 2023) (holding that injuries stemming from OFAC sanctions were not redressable).

Finally, efficiency and the absence of substantial prejudice to either party favor issuance of a short stay. A stay could help the Court determine whether Anxin's causes of action are remediable and thus promote efficiency by preventing the Court and the parties from expending resources litigating non-remediable claims. In addition, Anxin will not be substantially disadvantaged by a stay because the stay will not affect the statute of limitations on its claims and is not excessively long. As Anxin stated at the hearing on its motion, the case will move forward in all respects after six months if OFAC has not taken any action on Anxin's application.

---

[5] Section 6 of Executive Order 13382 authorizes the Secretary of the Treasury, with the Secretary of State, to carry out the executive order's directives. The Secretary of the Treasury in turn has delegated his authority to OFAC. *See* 31 C.F.R. §§ 539.802, 544.802 (cited in *Fulmen Co. v. Off. of Foreign Assets Control*, 547 F. Supp. 3d 13, 18 (D.D.C. 2020)).

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, the Court grants CAET's motion to stay this action until the earlier of six months from the date of this Court's order or the date of OFAC's response to CAET's request for a license to refund Anxin's payments. The Court denies CAET's request for limited discovery.

CAET's motion to dismiss will be taken off calendar. Upon the expiration of the stay, the parties shall meet and confer to discuss whether defendant's motion should be decided on the existing papers, in which case CAET should re-notice the motion for hearing, or whether Anxin should be permitted to file an amended complaint accounting for intervening events, in which case the parties should stipulate to a deadline for the filing of the amended complaint and note that the prior motion to dismiss should be denied as moot upon the filing of that amended complaint.

**IT IS SO ORDERED.**

Dated: February 10, 2026

P. Casey Pitts
United States District Judge